IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| BLAKE NORBERG, | : | Case No. 1:22-cv-177 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| IPRECHECK, LLC, *et al.*, | : | |
| Defendants. | : | |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. 10)

This matter is before the Court on Defendants' Motion to Dismiss or Stay Pending Arbitration (Doc. 10). Plaintiff has filed a response (Doc. 11), to which Defendants have replied (Doc. 12). Thus, this matter is ripe for review. For the reasons below, Defendants' Motion to Dismiss or Stay Pending Arbitration (Doc. 10) is **GRANTED**.

## FACTS

This action arises from an employment relationship between Plaintiff Blake Norberg and Defendant iPreCheck, LLC. (Compl., Doc. 1, ¶1.) Defendant Michael Obeso is a member, manager, Vice-Chairman, Chief Executive Officer, and Co-Founder of iPreCheck. (*Id.* at ¶¶ 13-16.) Defendant Exact Points, LLC is a corporation that allegedly shares identical products, ownership, and management to iPreCheck. (*Id.* at ¶¶ 39-40.)

In 2018, iPreCheck hired Plaintiff as an independent contractor. (Compl., Doc. 1, ¶ 17.) In 2019, iPreCheck elected to directly employ Plaintiff as Executive Vice President and Co-Founder of the company. (*Id.* at ¶¶ 20-21.) Pursuant to the employee-employer

relationship, Plaintiff signed an "Employment Agreement" that detailed Plaintiff's compensation from iPreCheck in the form of an annual salary, commission, and equity in the company. (*Id.* at ¶¶ 20-21, 23.) While Plaintiff has allegedly fully performed, iPreCheck has allegedly failed to adequately compensate Plaintiff in accordance with the Employment Agreement. (*Id.* at ¶¶ 27-30.) Additionally, Plaintiff alleges that iPreCheck and Obeso have improperly represented that "[Plaintiff] is not an owner, member, or equity interest holder in iPreCheck." (*Id.* at ¶ 34.) Plaintiff further alleges that iPreCheck and Obeso fraudulently diverted customers and funds from iPreCheck to Exact Points "to reduce the [m]onthly [c]ommissions owed to [Plaintiff] and to reduce the value of iPreCheck and, correspondingly, the value of the [e]quity" owed to Plaintiff. (*Id.* at ¶¶ 38-42.)

Plaintiff's Complaint, filed on April 1, 2022, alleges that (1) iPreCheck breached the Employment Agreement; (2) iPreCheck and Obeso fraudulently induced Plaintiff to enter into the Employment Agreement; (3) iPreCheck, Obeso, and Exact Points fraudulently diverted customers and funds to Exact Points; (4) iPreCheck, Obeso, and Exact Points were unjustly enriched at Plaintiff's expense; and (5) iPreCheck and Obeso are promissorily estopped from denying the terms of the Employment Agreement. (Compl., Doc. 1, ¶¶ 43-80.)

Defendants filed the pending Motion to Dismiss or Stay Pending Arbitration (Doc. 10) on June 1, 2022. Defendants argue that, in addition to the Employment Agreement, Plaintiff signed an "Acknowledgement Form and Mandatory Arbitration Agreement" ("Arbitration Agreement"). (Motion to Dismiss, Doc. 10, Pg. ID 54-57; Arbitration

2

Agreement, Doc. 10-1, Pg. ID 63-66.) Pursuant to the Arbitration Agreement, Plaintiff agreed that "any claim, dispute, or controversy . . . between [Plaintiff] and [iPreCheck] . . . arising from, related to, or having any relationship or connection whatsoever with [Plaintiff's] seeking employment with, employment by, or other association with [iPreCheck] . . . shall be submitted to and determined exclusively by binding arbitration." (*Id.*)

Defendants argue that, because of the Arbitration Agreement, Plaintiff's claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). (Motion to Dismiss, Doc. 10, Pg. ID 55, 61.) Alternatively, Defendants request a stay of this action pending arbitration. (*Id.* at Pg. ID 62.) In his response, Plaintiff consents to a stay pending arbitration. (Response, Doc. 11, Pg. ID 67.) Though, "Plaintiff does not agree that his claims against [] Exact Points are required to be arbitrated under the terms of the [A]rbitration [A]greement." (*Id.*)

## LAW

The first issue this Court must address is the procedural rule that applies to Defendants' motion. Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(1), arguing that this rule governs disputes related to arbitration at the pleading stage. (*See* Motion to Dismiss, Doc. 10, Pg. ID 55-56.) The Sixth Circuit, however, says that the proper vehicle for dismissing a case in favor of arbitration is Federal Rule of Civil Procedure 12(b)(6), not Rule 12(b)(1). *See Knight v. Idea Buyer, LLC*, 723 Fed. Appx. 300, 301 (6th Cir. 2018). "A motion to dismiss pursuant to an arbitration agreement should . . . be construed as a Rule 12(b)(6) motion even if it is mislabeled as a Rule 12(b)(1) motion."

3

*Id.* Thus, in the interest of justice and judicial economy, this Court will treat Defendants' motion as a "mislabeled" motion that should have been brought under Rule 12(b)(6). *See Great Am. Ins. Co. v. Johnson Controls, Inc.*, No. 1:20-cv-96, 2020 U.S. Dist. LEXIS 141454, at *14 (S.D. Ohio Aug. 7, 2020) (construing a motion to dismiss under 12(b)(1) to compel arbitration as mislabeled).

In reviewing a Rule 12(b)(6) motion, the question is whether the plaintiff's complaint sets forth a plausible claim—a determination that turns on well-pled facts. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Generally, the Court is limited to reviewing only those facts alleged in the complaint, along with any documents attached to it. *See, e.g., Whittaker v. Deutsche Bank Nat. Tr. Co.*, 605 F. Supp. 2d 914, 924 (N.D. Ohio 2009). "Documents that are attached to a motion to dismiss are part of the pleadings, however, if those documents are referred to in the complaint and central to its claims." *Great Am. Ins. Co.*, 2020 U.S. Dist. LEXIS 141454, at *1; *see also Hivner v. Active Elec., Inc.*, 878 F. Supp. 2d 897, 901 (S.D. Ohio 2012).

Here, the Court may consider the Arbitration Agreement in resolving the question of arbitration. Although the Arbitration Agreement was not specifically referenced in the Complaint, it is nevertheless inexplicably tied to the employment relationship at issue in this case. The Arbitration Agreement is one of the central documents that Plaintiff signed in order to become an employee of iPreCheck. (*See* Motion to Dismiss, Doc. 10, Pg. ID 54.) Because the Arbitration Agreement is thus "implicitly part of the Complaint, and is undisputedly central to the claim here, the Court can properly consider it." *Great Am. Ins. Co.*, 2020 U.S. Dist. LEXIS 141454, at *14 (considering an arbitration agreement that was

4

not included in the original complaint because the complaint was based on an employment agreement that expressly incorporated the arbitration agreement).

## ANALYSIS

Arbitration provisions are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Under the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle a controversy thereafter . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA manifests "a liberal federal policy favoring arbitration agreements." *Moses*, 460 U.S. at 24; *see also* 9 U.S.C. §§ 1-16. "The [FAA] creates a presumption in favor of arbitration, and requires that courts rigorously enforce agreements to arbitrate." *Nealy v. Shelly & Sands, Inc.*, No. 2:20-cv-1100, 2020 U.S. Dist. LEXIS 133370, at *10 (S.D. Ohio July 28, 2020) (cleaned up). "Unless the parties clearly and unmistakably provide otherwise, it is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter." *Lavender v. Titanium Metals Corp.*, No. 2:19-cv-2382, 2019 U.S. Dist. LEXIS 194841, at *3 (S.D. Ohio November 8, 2019).

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In cases where all claims are referred to arbitration, the entire litigation may

be dismissed rather than merely stayed. *1st Choice Auto Brokers, Inc. v. Credit Acceptance Corp.*, No. 2:06-cv-816, 2007 U.S. Dist. LEXIS 51942, at *2 (S.D. Ohio July 17, 2007).

The Sixth Circuit applies a four-pronged test to evaluate a motion to dismiss the proceedings for failure to arbitrate:

(1) The Court must determine whether the parties agreed to arbitrate;

(2) The Court must determine the scope of the agreement;

(3) If federal statutory claims are asserted, the Court must consider whether Congress intended those claims to be non-arbitrable; and

(4) If the Court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). In applying this test, "doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration." *Id.* at 715.

Both sides agree that the Arbitration Agreement is valid and applicable to Plaintiff, and Plaintiff has not asserted any federal statutory claims against Defendants. (*See* Docs. 1, 10, 11.) Plaintiff also does not disagree that the Arbitration Agreement applies to Defendants iPreCheck or Obeso. (Response, Doc. 11, Pg. ID 67.) Instead, Plaintiff disputes whether the scope of the Arbitration Agreement includes his current claims against Exact Points.[1] (*Id.*)

The question, then, is whether Exact Points—as a non-party to the Arbitration

---

[1] While Plaintiff does not articulate an argument to support such a contention, the Court must still consider the evidence presented and make a determination accordingly. *See Carver v. Bunch*, 946 F.2d 451, 452 (6th Cir. 1991) (finding that the record did not support the district court's dismissal of the complaint solely for failure to respond to defendant's motion to dismiss).

6

Agreement—can invoke arbitration against Plaintiff pursuant to the FAA. The Supreme Court has held that "a litigant who was not a party to the relevant arbitration agreement may invoke § 3 [of the FAA] if the relevant state contract law allows him to enforce the agreement." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). The Arbitration Agreement specifies that Ohio law applies. (Arbitration Agreement, Doc. 10-1, Pg. ID 65.)

In Ohio, nonsignatories may be bound to a contract through ordinary contract and agency principles. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003). The Sixth Circuit has identified five theories for binding nonsignatories to arbitration agreements: (1) where a nonsignatory has incorporated the arbitration agreement by reference; (2) where a nonsignatory has assumed contractual obligations under the contract; (3) where traditional agency principles so require; (4) where veil-piercing/alter ego theories so require; and (5) where theories of equitable estoppel so require. *Id*. Here, the fifth theory of equitable estoppel is of relevance.

When a willing nonsignatory seeks to compel arbitration with a signatory who is unwilling to arbitrate, Ohio courts perform an "alternative estoppel" analysis. *Reilly v. Meffe*, 6 F. Supp. 3d 760, 777-78 (S.D Ohio 2004). "[A] signatory can be compelled to arbitrate at the nonsignatory's insistence because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contractual obligations." *Id*. at 777. Put another way, equitable estoppel allows a nonsignatory to compel arbitration under two circumstances:

7

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise[] out of and relate [] directly to the [written] agreement, and arbitration is appropriate.
>
> Second, application of equitable estoppel is warranted. . . when the signatory [to the contract containing the arbitration clause] raises allegations of. . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise, the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Orcutt v. Kettering Radiologists, Inc.*, 199 F. Supp. 2d 746, 752 (S.D. Ohio 2002) (quotations omitted).

Plaintiff's claims against Exact Points are "intimately founded in and intertwined with the underlying contractual obligations" between Plaintiff, iPreCheck, and Obeso. *Reilly*, 6 F. Supp. 3d at 777. In the Complaint, Plaintiff specifically alleges that "Obeso, iPreCheck[,] and Exact Points diverted customers and funds from iPreCheck to reduce the [m]onthly [c]ommissions owed to [Plaintiff] and to reduce the value of iPreCheck and, correspondingly, the value of the [e]quity" allegedly owed to Plaintiff pursuant to the Employment Agreement. (Compl., Doc. 1, ¶ 42.) Such alleged misconduct by Exact Points is "substantially interdependent" to the alleged misconduct of iPreCheck and Obeso. *See Orcutt*, 199 F. Supp. 2d at 752. Thus, the claims against Exact Points are within the scope of the Arbitration Agreement which, in turn, permits Exact Points to compel Plaintiff to arbitrate its claims against Exact Points.

Additionally, it is in the best interest of judicial economy to have all claims

8

arbitrated together. *See Thibault v. Heartland Rec. Vehicles, LLC,* No. 2:18-cv-0732, 2019 U.S. Dist. LEXIS 45123, at *23 (S.D. Ohio Mar. 19, 2019). As previously mentioned, Plaintiff's claims against Defendants are all interconnected. If the Court were to compel Plaintiff to arbitrate its claims against iPreCheck and Obeso, but not Exact Points, "it would invite the penitential for inconsistent outcomes and would surely subject the parties to unnecessary costs and delays." *Id.*

Having found that all of Plaintiff's claims are appropriate for arbitration, the Court must determine whether this action should be dismissed or stayed pending arbitration. The FAA provides that, if a court finds that a party's claims are referable to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been in accordance with the terms of the agreement." 9 U.S.C. § 3. "Notwithstanding the plain language of the statute, however, the Sixth Circuit has interpreted section 3 as permitting dismissal of cases in which all claims are referred to arbitration." *1st Choice Auto Brokers, Inc.,* 2007 U.S. Dist. LEXIS 51942, at *2; *see Ozormoor v. T-Mobile USA, Inc.,* 354 Fed. Appx. 972, 975 (6th Cir. 2009). On that front, "[m]ost district courts in this circuit agree that the best procedure for enforcing arbitration agreements is to dismiss the court action without prejudice." *Jones v. U-Haul Go.,* 16 F. Supp. 3d 922, 944 (S.D. Ohio 2014).

Thus, as the entirety of this dispute has been assigned to arbitration, this Court concludes that dismissal of Plaintiff's Complaint without prejudice is the appropriate remedy in this case.

9

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion to Dismiss (Doc. 10), **DISMISSES** this action **WITHOUT PREJUDICE**, and **COMPELS** the matter to arbitration. This case is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND